IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | | |
|---|---|---|
| JEAN M. NELSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 3:04-CV-1350-H |
| | * | |
| AMX CORPORATION, | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant AMX Corporation's Motion for Summary Judgment, and supporting brief, filed June 6, 2005; Plaintiff's Response to Defendant's Motion for Summary Judgment, and supporting brief, filed June 29, 2005; Defendant AMX Corporation's Reply Brief, filed July 14, 2005; and Defendant AMX Corporation's Request for Issue-Specific Rulings and Clarification, filed September 12, 2005.

On September 2, 2005, the Court issued a summary order denying Defendant's motion for summary judgment on grounds that issues of fact appeared to be raised inferentially by Plaintiff's summary judgment evidence. In light of Defendant's motion for clarification, the Court now vacates that order and reconsiders the motion for summary judgment on grounds of mandatory arbitration and *res judicata*, neither of which were addressed by the Court.

For the reasons that follow, the Defendant's motion for summary judgment is granted in its entirety, and Plaintiff's claims are dismissed.

## I.    Background

Plaintiff Jean Nelson brings this case for employment discrimination and pay inequality on the basis of her sex, female, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (West 2005) ("Title VII"), and under the Equal Pay Act, 29 U.S.C. § 206(d)(1) (West 2005) ("EPA").  Effective July 31, 2001, Defendant AMX Corporation hired Ms. Nelson as vice-president and chief financial officer.  On February 17, 2003, Defendant's chief executive officer ["CEO"] Robert Carroll terminated her employment, under the employment contract in effect between the two parties.

On August 29, 2003, after her termination, Ms. Nelson filed a demand for arbitration under the employment contract for nonpayment of a bonus.  By order of August 5, 2004, the Arbitrator denied Plaintiff's claim.  On June 21, 2004, almost ten months after submitting the arbitration demand, Ms. Nelson filed this lawsuit.

Defendant petitions the Court to grant summary judgment on grounds (1) that Plaintiff's claims are subject to the mandatory arbitration clause of her employment contract; and (2) that they are foreclosed by the doctrine of *res judicata*.

## II.    Standard of Review

### A.    Summary Judgment Standard

Summary judgment is appropriate if the pleadings and summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  "The moving party bears the initial burden of identifying those portions

2

of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25).

The moving party may meet its initial burden "by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant meets its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Lujan*, 497 U.S. at 888; *Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995).

## III.   Analysis

### A.   *Res Judicata*

In the motion for summary judgment before the Court, Defendant AMX argues that all of Plaintiff's claims are subject to *res judicata* and therefore should be dismissed. On August 29, 2003, after her termination from Defendant's employment on February 17, 2003, Plaintiff filed a claim for arbitration under her employment contract. Specifically, she challenged the failure of AMX to pay her a discretionary bonus for the months of the fiscal year that she worked prior to her termination.

3

Defendant maintains that Plaintiff should have submitted all of the claims in this lawsuit to be arbitrated at the same time as her bonus dispute.  The Court agrees.

The rule of *res judicata*, or claim preclusion, is central to the purpose for which civil courts have been established -- the conclusive resolution of disputes within their jurisdiction.  *Montana v. United States*, 440 U.S. 147, 153 (1979).  The finality of *res judicata* applies to all claims brought or which should have been brought in a prior action, regardless of whether they were actually asserted or determined in the prior proceeding.  *Brown v. Felsen*, 442 U.S. 127, 131 (1979); *see Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (holding that final judgment binds parties and their privies "not only as to every other matter which was offered . . . but as to any other admissible matter which might have been offered").  A valid and final arbitration award has the same *res judicata* effect as the judgment of a court.  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 16 (2001) (Ginsburg, J., concurring) (citing Restatement (Second) of Judgments § 84); *see Pike v. Freeman*, 266 F.3d 78, 89 (2d Cir. 2001) ("Arbitration is not a trial run in which a party may sit quietly by without raising pertinent issues, wait to see if the result is in his favor and then seek judicial relief as an afterthought.").

In this Circuit, a finding of *res judicata* requires the following:  (1) that the parties are identical in both suits; (2) that a court of competent jurisdiction rendered the prior judgment; (3) that there was a final judgment on the merits in the previous decision; and (4) that in both suits the plaintiff raises the same cause of action.  *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983 (*en banc*).  In this case, a final arbitration award naming Ms. Nelson as Claimant, and AMX as Respondent, was entered under the auspices of the American Arbitration Association on August

4

5, 2004. The first three elements are indisputably met. At issue is whether under the fourth element the arbitration involved the "same cause of action" that Ms. Nelson alleges in her present Complaint.

The inquiry does not begin there, however. Because the prior proceeding was an arbitration, a preliminary question is whether the present claims were arbitrable at the time. *Cf. In re Howe*, 913 F.2d 1138, 1145 (5th Cir. 1990) (holding in a bankruptcy proceeding that "[e]ven if the two actions are the same under the transactional test, res judicata does not bar the instant action unless [plaintiffs] could and should have brought their claims in the former proceedings"). To determine, then, whether Plaintiff's employment discrimination claims under Title VII and the EPA should have been asserted at arbitration and are thus precluded, the Court must address two issues: (1) whether those claims are subject to the mandatory arbitration clause of the employment contract; and (2) whether for *res judicata* purposes they constitute the "same claim" as the one that was arbitrated.

1.      Mandatory Arbitration

It is undisputed in this case that a valid employment agreement existed between Ms. Nelson and AMX. That agreement contained a mandatory arbitration clause. Under the Federal Arbitration Act ["FAA"], an arbitration clause in any contract evidencing a transaction involving commerce is "valid, irrevocable, and enforceable," except upon grounds that exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.

In this Circuit the well-settled rule is that Title VII claims are not exempt from a mandatory arbitration clause in an employment contract. *See Mouton v. Metropolitan Life Ins.* Co., 147 F.3d 453, 455-56 (5th Cir. 1998); *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 747-48 (5th Cir. 1996). Although the Court finds no case that expressly declares an EPA claim to be arbitrable as well, nothing about that statute mandates a different result. The EPA is an anti-discrimination statute that

5

prohibits paying lower wages on the basis of an employee's sex. *See* 29 U.S.C. § 206(d)(1). The elements of an EPA claim are similar to a wage discrimination claim under Title VII. *Estrada v. A. Siros Hardware, Inc.*, 1984 WL 2348, *5 (S.D. Tex. Oct. 25, 1984) (Kazen, J.). As the Fifth Circuit noted in extensive analysis in *Rojas*, the Federal Arbitration Act could have and did not exclude Title VII from its province. *Rojas*, 87 F.3d at 748. The same argument applies to the Equal Pay Act. Moreover, federal statutory causes of action similarly providing relief for discrimination have been held arbitrable. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (Age Discrimination in Employment Act); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 149-50 (1st Cir.1998) (Americans with Disabilities Act); *Jones v. Fujitsu Network Communc'ns, Inc.*, 81 F. Supp.2d 688, 689 (N.D. Tex. 1999) (Family Medical Leave Act). For those reasons, the Court takes the short step to find that claims under the Equal Pay Act, like those under Title VII, are subject to an employment contract clause requiring mandatory arbitration. The issue in this case becomes, then, whether the employment contract between Ms. Nelson and AMX requires her Title VII and EPA claims to be arbitrated.

It is axiomatic that whenever the scope of an arbitration clause is in question, "the court should construe the clause in favor of arbitration." *Rojas*, 87 F.3d at 749 (quoting *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 527-28 (5th Cir. 1983)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939-40 (1995). Under the Federal Arbitration Act, any doubts concerning the scope of arbitrable issues should be resolved as a matter of federal law in favor of the FAA. *Id*. A motion for arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 167 (5th Cir. 1979).

In the employment contract at issue in this case, Paragraph 8.08 entitled "Mandatory Arbitration" dictates in relevant part: "All claims, disputes, controversies, differences or misunderstandings between the parties *arising out of, or by virtue of this Agreement* or the interpretation of this Agreement . . . shall be settled or determined by binding arbitration . . .." Def's Appx. 3(c) (emphasis added).  The question is whether the phrase "arising out of, or by virtue of this Agreement" limits arbitration to disputes concerning the terms of the document, or whether it is sufficiently broad to cover claims of employment discrimination arising more generally out of the employment relationship and termination.

Other courts have looked at specific arbitration language in a similar inquiry.  In *Rojas*, the Fifth Circuit interpreted the phrase "or any other disputes" to apply not only to controversies regarding the terms of the employment contract at issue there, but also to any dispute in the whole of the relationship between the parties, and thus to the plaintiff's Title VII claim.  *See Rojas*, 87 F.3d at 749.  In other jurisdictions as well, general employment contract language has been construed broadly to require arbitration of employment discrimination claims.  *See, e.g.*, *Crawford v. West Jersey Health Sys*., 847 F. Supp. 1232, 1243 (D.N.J. 1994) (construing the phrase "any dispute . . . regard[ing] the interpretation or performance of any part of this Agreement.").  In this case, the operative phrases are "arising out of" and "by virtue of."  Even if the phrase "arising out of . . . this Agreement" is to be read narrowly, the additional phrase "or by virtue of . . . this Agreement" expands the scope.  The plain meaning of "by virtue of" is "because of."  Because of the employment contract in this case, and by virtue of the contract's existence, an employment relationship was created between Ms. Nelson and AMX.  The Court is of the view that the phrase invokes the whole of the employment relationship and necessarily includes all disputes arising from it.

7

Such a reading has support in the case law.  In a non-employment context, the Fifth Circuit has construed the phrase "arising out of or relating to" to encompass not only all contract claims involved in a breach of a dealer agreement, but also any tort claims arising out of "the business relationship."  *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261, 1265 (5th Cir. 1994).  In a non-arbitration (forum selection) context, the phrase "any and all disputes or controversies *arising out of or by virtue of* this Contract" was construed broadly to include not only contract claims related to the provisions therein, but also to encompass tort claims arising during the course of the employment relationship in its entirety.  *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998) (emphasis added).

Mindful of the strong federal policy favoring arbitration, the Court holds that the language of Ms. Nelson's arbitration clause applies to her employment relationship as a whole.  Because Plaintiff's causes of action under Title VII and the Equal Pay Act arise from that employment relationship, they are subject to the mandatory arbitration clause in her employment contract.  Even absent any suggestion of *res judicata*, therefore, this Court would have granted Defendant's motion for summary judgment and dismissed the case in its entirety to order the parties to arbitration.[1]  *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (affirming dismissal

---

[1]  Plaintiff argues that Defendant has waived its right to arbitration by participating in the litigation of this case.  It is true that Defendants have engaged heavily, some might say excessively, in discovery and other motion practice here and in the magistrate's court.  However, Defendant raised the issue of arbitration in its Original Answer; raised it again in a timely filed motion for summary judgment; and, while that motion was under consideration, cannot be faulted for maintaining its defense and trial preparations in the event summary judgment were to have been denied.  Though a finding regarding waiver is unnecessary for the disposition of this case on grounds of claim preclusion, the Court notes that Defendant did not waive its right to compel arbitration.  *See City of Meridian, Miss.*, 721 F.2d at 528 (disfavoring the waiver defense).

8

where all claims were subject to arbitration); *Hughes v. CACI, Inc.*, --- F. Supp.2d —, 2005 WL 1902427, *2 (D.D.C. 2005) (construing a dispositive motion as a motion to compel arbitration); *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999) (upholding dismissal on arbitration grounds even though plaintiff would have no remedy because the statute of limitations had run).

2.   Transactional "Same Claim" Analysis for Claim Preclusion

Having decided that Plaintiff's claims *could* have been arbitrated, the Court must now determine whether under the doctrine of *res judicata* they *should* have been arbitrated -- whether, that is, they constitute the "same cause of action" litigated in the prior proceeding.  For that purpose, courts in the Fifth Circuit apply a "transactional test."  *Nilsen v. City of Moss Point*, 701 F.2d 556, 560-63 & nn. 4, 5 (1983) (adopting the test from the Restatement (Second) of Judgments).  A judgment in a prior litigation extinguishes a plaintiff's rights to a future claim "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."  *Id*. at 560 & n. 5 (quoting Restatement (Second) of Judgments § 24 (1982)).  Under the transactional approach, the critical issue is not the identity of relief requested or the name of the claim asserted, but whether the two actions are based on the same nucleus of operative facts.  *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 313 (5th Cir. 2004).  Whether a factual grouping constitutes a single transaction is to be determined pragmatically, giving weight to such considerations as whether the facts are "related in time, space, origin, or motivation," and whether they form a "convenient trial unit."  *Id.* at 313.

In this case, Ms. Nelson arbitrated her claim for a $70,410.00 bonus, which she believed due her under her employment contract.  As part of her employment compensation, Ms. Nelson was

9

eligible for an annual bonus, the payment of which was at the discretion of the CEO. Her eligibility, under the contract terms, would be based on corporate and individual performance, and other factors the CEO deemed to be important. The contract expressly stated that an executive whose employment was terminated "without cause" would remain eligible for a *pro rata* bonus. It is undisputed that Ms. Nelson worked approximately ten and one-half months during the fiscal year of her termination and was terminated "without cause."

Turning to the present litigation, the Court repeats that Ms. Nelson sues under Title VII and the EPA.[2] Her claims revolve around disparate treatment because of her sex; wrongful termination on the basis of her sex; and unequal pay. Specifically, she alleges that Defendant's CEO, Robert Carroll, discriminated against her and ultimately fired her because she was female. Moreover, Ms. Nelson alleges in her Complaint that she did not receive the same compensation -- both with regard to the bonus and to salary -- as AMX's male executives who were similarly qualified and had similar job responsibilities.

The question before the Court is whether Plaintiff's contract claim for the denial of a discretionary, merit-based bonus and Plaintiff's statutory employment discrimination claims arise from the same transaction, proceed from the same nucleus of operative fact. No case appears to be directly on point. In a number of settings, courts using the transactional test have held an allegation of employment discrimination to be the "same claim" as a previously asserted cause of action for a different type of alleged employment discrimination or other wrongful employment conduct. *E.g.*, *Miller v. U.S. Postal Serv.*, 825 F.2d 62 (5th Cir. 1987) (sex discrimination and disability

---

[2] To the extent Plaintiff's Complaint can be construed to raise causes of action related to the employment relationship between the parties other than the Title VII and EPA claims expressly named in this Opinion, those causes of action are subject to the same analysis.

discrimination); *Fleming v. Travenol Lab., Inc.*, 707 F.2d 829 (5th Cir. 1983) (race and sex);

*Cieszkowska v. Gray Line New York*, 295 F.3d 204 (2d Cir. 2002) (wrongful discharge/defamation

and national origin discrimination); *Swaida v. Gentiva Health Servs.*, 238 F. Supp. 2d 325 (D. Mass.

2002) (age and retaliation); *Peda v. Fort Dodge Animal Health, Inc.*, 293 F. Supp 2d 973 (N.D. Iowa

2003) (Title VII and wrongful termination).  Applying a transactional analysis, the Eighth Circuit

barred an employee from asserting tort claims arising out of the same employment relationship as

previously litigated discrimination claims.  *Poe v. John Deere Co.*, 695 F.2d 1103 (8th Cir. 1982)

(noting that the "thrust" of all of the claims involved circumstances of discharge).  The Tenth Circuit

has gone so far as to establish an umbrella rule that "all claims arising from the same employment

relationship constitute the same transaction or series of transactions for claim preclusion purposes."

*Mitchell v. City of Moore*, *Ok.*, 218 F.3d 1190, 1202 (10th Cir. 2000).

Without venturing quite that far, the Court finds in this case that the same nucleus of

operative fact exists among the arbitrated bonus claim and the sex discrimination claims.  All of the

claims arise out of the substantive employment relationship between the parties.  More specifically,

they arise at the same time among the same players at the same events -- the termination of Ms.

Nelsons's employment and the interactions leading up to it.  Moreover, the bonus itself represents

a significant amount of the actual damages alleged in Ms. Nelson's Complaint.  The same primary

fact witnesses would have been involved in all of the claims -- Ms. Nelson, AMX CEO Robert

Carroll, and the AMX records custodian.  Mr. Carroll was the primary decision-maker for both the

denial of Ms. Nelson's bonus and termination of her employment.

Among Ms. Nelson's arbitration grounds for claiming a right to the bonus were allegations

that she had met her business goals for the year, and that AMX's other executives had received their

bonuses.[3]  In the present sex discrimination lawsuit, AMX asserts defenses related to those issues.
Specifically, AMX pleads the general defense of "legitimate business purpose" in its treatment and
termination of Plaintiff.  Much, possibly all, of the evidence supporting that theory would likely have
found its way to the Arbitrator in an appropriate defense to Ms. Nelson's claim to a bonus based on
merit and other business considerations.

Finally, arbitration at the time of Ms. Nelson's termination of all claims arising out of her
employment would be reasonable to expect in this case.  She possessed the factual basis of all her
claims at the time of dismissal.  Having made a similar claim against a previous employer, she was
aware of the nature and underpinnings of employment discrimination.  She was represented by the
same counsel at both proceedings.  This is not a case of an unsophisticated party arbitrating an
ancillary administrative matter while contemplating her primary cause of action.  *Cf. Herrmann v.
Cencom Cable Assoc.*, 999 F.2d 223, 225-26 (7th Cir. 1993) (finding no claim preclusion in a Title
VII case where the prior litigation involved failure to process a COBRA request for post-termination
medical coverage).  The Court concludes that under this fact-specific analysis, Ms. Nelson's Title
VII and EPA claims arise from the same transaction or series of transactions as her discretionary
bonus claim and should have been brought at the prior arbitration.

---

[3]  Ms. Nelson argued in arbitration that the setting and attainment of those goals created a
unilateral contract between the parties.  This issue of law was decided in AMX's favor by the
Arbitrator via summary judgment.  The narrow grounds on which the case was ultimately
decided, however, does not restrict the analysis of the operative facts underlying the dispute.

B.      Sufficiency of Pleading

In response to Defendant's summary judgment motion, Plaintiff declines to address the substantive issues of mandatory arbitration or *res judicata*.  Instead, she argues only that Defendant did not properly plead its affirmative defenses.

Generally, an affirmative defense is not waived so long as it is raised at a "pragmatically sufficient time."  *United States v. Shanbaum*, 10 F.3d 305, 312 (5th Cir. 1994) ("[W]here the matter is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply precisely with Rule 8(c) is not fatal.") (citation omitted).  Although *AMX* did not plead *res judicata* in its Answer, the affirmative defense was raised and briefed in the timely motion for summary judgment, filed June 6, 2005.  Plaintiff had ample opportunity to respond.  Accordingly, the defense has not been waived.  *See Lafreniere Park Foundation v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000) (holding *res judicata* not to be waived even though raised for the first time in a motion for summary judgment).  Accordingly, Plaintiff's opposition to summary judgment on this ground is baseless.

IV.   **Conclusion**

For the reasons given above, the Court holds that all of Plaintiff's claims in this case are subject to the mandatory arbitration clause of her employment contract.  Because Plaintiff should have submitted those claims in the prior arbitration between the parties, they are precluded by the doctrine of *res judicata*.

Accordingly, the Order of September 2, 2005, is **VACATED**.  Defendant's motion for summary judgment is **GRANTED** in its entirety.  This case is **DISMISSED WITH PREJUDICE**, and a Final Judgment will issue.

SO ORDERED.

DATED: September 22, 2005.


**BAREFOOT SANDERS, SENIOR JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

14